UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14760-GAO

SUSAN ELIZABETH HASSETT,
Plaintiff,

v.

ELISABETH HASSELBECK,
Defendant.

OPINION AND ORDER
March 29, 2016

O'TOOLE, D.J.

On December 30, 2014, *pro se* plaintiff Susan Hassett filed a complaint against defendant Elisabeth Hasselbeck alleging conversion. Hassett claims that a book by Hasselbeck featuring gluten-free recipes amounts to a conversion of Hassett's earlier published book with a similar theme. Hassett seeks $1,000,000 in damages. Hasselbeck has moved to dismiss the complaint.

**I.     Background**

Hassett alleges she is the author of a book entitled Living with Celiac Disease ("Living"), for which she obtained a copyright in March 2008. She alleges she mailed a copy of Living to Hasselbeck in April 2008 and that Hasselbeck received the book several days later.

In 2009, Hasselbeck published The G Free Diet. Hassett, then represented by counsel, brought suit against Hasselbeck, her publisher, and her ghost writer, alleging copyright infringement with respect to The G Free Diet. Hassett v. Hasselbeck, C.A. 09-11063-JLT (D. Mass.). In November 2009, the case was dismissed pursuant to Local Rule 4(m) for want of prosecution.

Soon thereafter, Hassett, acting *pro se*, brought essentially the same suit. Hassett v. Hasselbeck, C.A. 09-12034-MLW (D. Mass.). Hassett alleged that the defendants published and distributed The G Free Diet, which she claimed was "substantially similar" to her copyrighted book. The defendants moved to dismiss the complaint on the ground that the purported similarities identified by Hassett were not copyrightable and failed to support an infringement claim. The court treated the defendants' motion to dismiss as a motion for summary judgment and, after careful analysis, granted summary judgment for the defendants. The court held that, after the elements of Living not eligible for copyright protection were identified and eliminated from consideration, a rational factfinder would be compelled to conclude that no substantial similarity existed between the two books. Hassett v. Hasselbeck, 757 F. Supp. 2d 73, 77-78 (D. Mass. 2010). The First Circuit affirmed. Hassett v. Hasselbeck, No. 11-1111, slip op. at 1-2 (1st Cir. Nov. 7, 2011).

In 2012, Hasselbeck published a second book, Deliciously G-Free. Hassett then brought this complaint against Hasselbeck for conversion, arguing that Hasselbeck improperly used Living to write Deliciously G-Free. She claims that Hasselbeck "converted [Hassett's] book" by using Hassett's "framework structure," "text," "recipes," "information," and "compilation of research" when writing Deliciously G-Free. (Compl. ¶¶ 4, 10, 11 (dkt. no. 1).)

**II.      Discussion**

    A.      Conversion

In her motion to dismiss, Hasselbeck argues first that Hassett's sole claim for conversion is preempted by the Copyright Act. The general scope of copyright is specified in 17 U.S.C. § 106, which states, in relevant part, that "the owner of copyright under this title has the exclusive rights . . . to reproduce the copyrighted work . . . ." The statute preempts any state law that creates "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of

copyright as specified by Section 106." 17 U.S.C. § 301. "For the Copyright Act to preempt a state-law claim: (1) the subject of the state claim must constitute a work protected under the Copyright Act, and (2) the state-law claim must provide a right equivalent to those provided by the Copyright Act." Henry v. Nat'l Geographic Soc'y, 147 F. Supp. 2d 16, 20 (D. Mass. 2001) (citation omitted).

Both elements are met here. As to the first, it appears that the parties do not dispute that Living, as a "literary work[]," falls within the "subject matter of copyright." See 17 U.S.C. § 102. As to the second, Hassett's sole complaint is that Hasselbeck wrongfully and without authorization copied aspects of Living. In essence, she seeks to enforce her own right to reproduce—a right equivalent to one protected by section 106 of the Copyright Act. See, e.g., Jalbert v. Grautski, 554 F. Supp. 2d 57, 75 (D. Mass. 2008) (finding conversion claim preempted where conduct at issue consisted of defendant's alleged distribution of copies of graphic print without authorization and without payment to plaintiff); Henry, 147 F. Supp. 2d at 20-21 (finding conversion claim preempted where claim was based on defendant's purportedly unauthorized reproduction of plaintiff's photographs); Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 650 F. Supp. 838, 849 (D. Mass. 1986) (finding conversion claim preempted where plaintiff complained of defendant's reception of video signals and presentation to patrons).

Consequently, Hassett's state law claim is preempted by the Copyright Act. Although Hassett does not plead copyright infringement, the Court instead will construe her *pro se* pleadings liberally and treat her current complaint as one alleging copyright infringement, see Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990), the only possible remedy available to her for the claimed wrong.

B.     Copyright Infringement

Having construed Hassett's complaint as one of copyright infringement, I turn to the substantive question whether Hassett has adequately pled facts sufficient to support a claim of copyright infringement.[1] In order to state a claim for copyright infringement, a plaintiff must plausibly allege (1) ownership of a valid copyright and (2) copying by the defendant of constituent elements of the work that are original. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). To establish copying, a plaintiff must show that "the defendant copied the plaintiff's copyrighted work" and that the "copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar." Yankee Candle Co. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 33 (1st Cir. 2001) (internal quotation marks and citation omitted). The substantial similarity assessment "focuses not on every aspect of the copyrighted work, but on those aspects of the plaintiff's work [that] are protectable under copyright laws and whether whatever copying took place appropriated those [protected] elements." T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97, 112 (1st Cir. 2006) (alteration in original) (internal quotation marks and citation omitted). Two works are substantially similar if a "reasonable, ordinary observer, upon examination of the two works, would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression." Id. (internal quotation marks and citation omitted).

---

[1] Both parties have attached exhibits in support of their briefs. While I will consider documents "central to the plaintiff's claim" or "centrally referred to in the complaint," including the particular works in controversy, see, e.g., Feldman v. Twentieth Century Fox Film Corp., 723 F. Supp. 2d 357, 363 (D. Mass. 2010) (citation omitted); Vallery v. Am. Girl Dolls, No. CIV.A. 13-5066, 2015 WL 1539253, at *2 (E.D. La. Apr. 6, 2015) (collecting cases), I am not converting the motion to dismiss into one for summary judgment. See Fed. R. Civ. P. 12(d). Therefore, in order to survive Hasselbeck's motion, Hassett's complaint need only contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Hasselbeck, assuming for purposes of the motion to dismiss that Hassett has sufficiently alleged ownership and actual copying, focuses on the essential element of substantial similarity, arguing that the case should be dismissed because an analysis of the protected elements of Hassett's book demonstrates that there is no substantial similarity between Living and Deliciously G-Free.

As an initial matter, I recognize that Hassett has labored to research and assemble the facts and ideas contained in Living. The idea of gluten-free diets is one about which she obviously cares deeply and which is very personal for her. But copyright law protects only the *expressions* of ideas, and not the *ideas themselves*. See 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). The ideas and concepts underlying the expression are free for anyone's taking. Feist, 499 U.S. at 349 (citation omitted). "Copyright assures authors the right to their original expression" while also "encourage[ing] others to build freely upon the ideas and information conveyed by a work," see Hassett, 757 F. Supp. 2d at 78, and the law provides only that Hassett's original expression be protected, and not the general, unoriginal idea and concept of gluten-free living.

Hassett appears to claim that Hasselbeck copied her "framework structure." (Compl. ¶ 11; id., Ex. G (dkt. no. 1-1 at 14).) A review of the two works reveals that similarities in structure are minimal at best. Both include dedications, acknowledgements, sections with kitchen tips, and chapters focusing on specific categories of food with some overlap, including breakfast, appetizers, and main meals. But, substantively, Deliciously G-Free contains only one chapter on kitchen advice and five chapters focused on recipes. In comparison, Living contains twenty-seven chapters

in all covering a wide range of topics, including general health information and advice on living with celiac disease (fifteen chapters) as well as recipes (nine).

Even if one were to find some broad similarity related to the topics and their order of presentation, such as introductory chapters providing general tips followed by chapters of recipes organized by types of meals, general thematic ordering and arrangement of a work is ordinarily not copyrightable. Hassett, 757 F. Supp. 2d at 89; see also Lapine v. Seinfeld, No. 08 Civ. 128(LTS)(RLE), 2009 WL 2902584, at *9 (Sept. 10, 2009). Further, such similarities typically reflect the "general sequence and topic selection" that "are customary to the genre" of cookbooks and "thus unprotected under the doctrine of *scènes à faire*." See Hassett, 757 F. Supp. 2d at 89 (citations omitted); see also Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 68 (1st Cir. 2009) ("The doctrine of *scènes à faire* denies copyright protection to elements of a work that are for all practical purposes indispensable, or at least customary, in the treatment of a given subject matter."). Therefore, any similarities in the framework "relate[] to unprotected elements of the works and [do] not support" a plausible claim of substantial similarity." See Hassett, 757 F. Supp. at 90.

Hassett next makes broad allegations that Hasselbeck copied her "text." Although her pleadings lack specificity in this regard,[2] at the hearing on the present motion Hassett narrowed the alleged infringement of "text," claiming that Chapter 1 of Deliciously G-Free, infringes various pages between page 26 and page 47 of Living.[3] These sections generally are dissimilar. For instance, Living focuses on topics generally absent from Deliciously G-Free, such as details about

---

[2] This deficiency itself would justify a dismissal for failure to state a claim upon which relief can be granted. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (holding that complaint must state "enough facts to state a claim to relief that is plausible on its face").

[3] Specifically, she complains Hassett "used" pages 26, 27, 31, 33, 34, 36, 38, 39, 42, 44 and 46 of Living.

celiac disease symptoms and gluten reactions (e.g., abdominal pain and bloating, malabsorption, anemia, nausea, depression, and dermatitis herpetiformis) and issues specific to children with celiac disease (e.g., advice for school-related complications and purported connections between celiac disease and autism).

But to the extent there are some similarities in the identified sections, they arise out of the similarity of ideas, which, as noted above, are not protected under copyright law. See Feist, 499 U.S. at 348-49. For instance, Living cautions the reader to be mindful of gluten potentially lurking in packaging or of products containing trace amounts of gluten,[4] and Deliciously G-Free provides warnings about items that may surprisingly contain gluten.[5] They both then have a similar idea or concept—gluten is present sometimes in surprising places—but that idea is not given copyright protection. And although they may share some words, the passages are essentially dissimilar as to the ways in which the idea is expressed. See, e.g., CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1519 (1st Cir. 1996) ("It is axiomatic that copyright law denies protection to

---

[4] (E.g., Decl. of Robin Morse in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl., Ex. 6 at 38 (dk. no. 17-6) ("Remember check all your spices to make sure they are not packaged with a starch derived from wheat. Usually the spices we can use should be pack [sic] from a starch derived from corn and sometimes potatoes. The best spices to use are fresh but sometimes that is a difficult, [sic] just be careful."); id. ("Another big red flag is if you see the words artificial coloring or natural flavoring. If you see this immediately call the company and remember be assertive when you are asking questions."); id. at 39 ("All meats at your local supermarket are packaged with a ten percent water based preservative that cannot be identified as not having gluten in it. This is mandated by the state guidelines. Unless it is marked one hundred percent natural with no added preservatives, which is shipped to your supermarket, you should stay clear of it.").)

[5] (E.g., Morse Decl., Ex. 7 at 13 (dkt. no.17-7) ("Most whole sour creams on the market are gluten-free, but 'light' sour creams can be thickened with flours, starches, and stabilizers that can be hidden havens for gluten."); id. ("Butter is one of those luscious, rich, chef-friendly items that makes it onto every gluten-free shopping list. But some brands of 'unsalted' or 'sweet' butters have 'natural flavorings' on their ingredient list. What exactly is a 'natural flavoring'? Well, it can be one of a host of ingredients processed from a natural food source, including essences, oils, proteins, and, yes, grains.").) I note that Living also warns about the 'natural flavorings' in butter on page 40 but Hassett does not contend that is one of the pages copied by Hasselbeck (nor would such a claim be sustained).

fragmentary words and phrases . . . on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection." (internal quotation marks omitted)). Another idea the two specific sections share is cross-contamination. Living warns about the risks of deli meat slicers and conveyer belts,[6] while Deliciously G-Free likewise counsels about crumbs migrating to supposedly gluten-free items or getting trapped on cleaning products and storage containers.[7] But, again, the idea of cross-contamination is not protected by copyright, and the actual expressions are markedly dissimilar.

Hassett next alleges that Hasselbeck copied her "recipes." Although the sections that Hassett specified at the motion hearing do not contain recipes, Hasselbeck has noted that there are five recipes in the two texts that broadly overlap, including potato skins, chicken tenders, roast chicken, chicken broth, and meatballs. These dishes are not uncommon and the information Hassett conveys in them is purely functional. Hassett's recipes comprise of lists of needed ingredients and directions for combining them; there is no expressive elaboration upon either. Without some "minimal level of creativity," see CMM Cable Rep, 97 F.3d at 1519, Hassett's cited recipes are not themselves copyrightable. See Publ'ns Int'l, Ltd. v. Meredith Corp., 88 F.3d 473, 480, 482 (7th Cir. 1996) (finding recipes comprising only lists of required ingredients and

---

[6] (E.g., Morse Decl., Ex. 6 at 39 ("[A]sk if [the product] has been packaged on a belt where products containing wheat have been packaged. As well as has the belt been [c]leaned in between packaging."); id. ("Some deli meats are gluten free, which is all good and well, but has the slicer been cleaned in between orders? Probably not . . . .").)

[7] (E.g., Morse Decl., Ex. 7 at 5 ("I recently went into a coffee shop that sold g-free treats. The problem, though, was that they were on the shelf *below* the gluten-containing muffins, which rained crumbs all over the supposedly g-free offerings every time one was pulled out.") (emphasis in original); id. at 6 ("For products that we go through quickly, like peanut butter and jelly, we do stock both options, but I use labels on the g-free versions so that a knife that just made the trip across a piece of whole wheat bread does not go for a dip in my g-free jar.").) As with butter, see note 5, Living also cautions against so-called double-dipping on page 40, a page Hassett does not contend was copied by Hasselbeck.

directions for combining them as lacking "even a bare modicum of the creative expression—i.e., the originality—that is the '*sine qua non* of copyright'" (quoting Feist, 499 U.S. at 345)); Tomaydo-Tomahhdo, LLC v. Vozary, No. 15-3179, 2015 WL 6143350, at *3 (6th Cir. Oct. 20, 2015) (finding recipes excluded from copyright protection where ingredients were mere factual statements and instructions were only functional directions); Lambing v. Godiva Chocolatier, 142 F.3d 434, at *1 (6th Cir. 1998) (unpublished table decision) (same); see also Lorenzana v. S. Am. Rests. Corp., 799 F.3d 31, 34 (1st Cir. 2015) (finding that a "recipe—or any instructions—listing the combination of chicken, lettuce, tomato, cheese, and mayonnaise on a bun to create a sandwich is quite plainly not a copyrightable work"); cf. Nat'l Nonwovens, Inc. v. Consumer Prods. Enters., Inc., 397 F. Supp. 2d 245, 256 (D. Mass. 2005) (instructions for boiling wool felt were purely functional without any stylistic flourishes or other forms of creative expression and therefore unprotected). Viewing the recipes as a whole does not change the analysis. See Nat'l Nonwovens, 397 F. Supp. 2d at 256. The recipes generally are "functional directions for achieving a result" see Lambing, 142 F.3d 434, at *1, and consequently not protected under copyright law.

Hassett's final alleged similarity is based on the "information" and "compilation of research" she claims Hasselbeck copied. To the extent she is alleging that Hasselbeck copied facts and other information which Hassett devoted time to research and compile, the claim fails. Hassett's general effort does not alone afford her protection from others using her facts or research in the future, so long as there is sufficient differentiation between the expressions and collected facts themselves. See Feist, 499 U.S. at 345-46, 359 ("As § 103 makes clear, copyright is not a tool by which a compilation author may keep others from using the facts or data he or she has collected."); id. ("[T]he facts contained in existing works may be freely copied because copyright protects only the elements that owe their origin to the compiler—the selection, coordination, and

arrangement of facts.") Here, the selection and arrangement of any purported overlapping facts are sufficiently distinct such that there is no protected similarity between the sections to which Hassett points. See Hassett, 757 F. Supp. 2d at 87-89.

Finally, in terms of the total concept and feel of the two books, the books are markedly different. Living is written in a somewhat rambling style and contains occasional grammatical errors characteristic of speech patterns. Hassett emphasizes the symptoms of and hardships associated with celiac disease. The book is text-heavy and lacks any photographs or drawings of food. Deliciously G-Free focuses less on the downside of celiac disease and takes a more positive tone. It introduces recipes with personal vignettes and contextual flourishes, such as how a recipe is based on her favorite take-out dish or how her children responded to a particular recipe. She includes numerous colorful photographs and utilizes variety of text colors, fonts, and formats. Additionally, while both books include gluten-free recipes, Living covers a broad range of foods with little connecting them other than their lack of gluten, whereas Deliciously G-Fee recipes are designed to replicate the flavor and variety of comparable foods containing gluten—"Food So Flavorful They'll Never Believe It's Gluten-Free."

For all these reasons, Hassett's allegations are insufficient to sustain a claim that Hasselbeck unlawfully appropriated her protected expression. In particular, she has failed to adequately plead facts that plausibly show that Hasselbeck's Deliciously G-Free is substantially similar to Hassett's Living. The purported similarities alleged by Hassett arise out of the general ideas, facts, functional directions, and aspects of the works customary to the genre, none of which are copyrightable. Once these unprotected elements are filtered from consideration, it is implausible on these allegations that Hassett could show that the two works are substantially similar in the eyes of a reasonable, ordinary observer. See T-Peg, 459 F.3d at 112.

### **III.**     **Conclusion**

For the foregoing reasons, Hasselbeck's Motion to Dismiss Plaintiff's Complaint (dkt. no. 15) is GRANTED. Hassett's Motion in Response to Oral Hearing/Summary Judgment (dkt. no. 31) is DENIED. The complaint is DISMISSED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge
